May it please the Court, my name is Patricia Kramer and I represent the appellant, Jerry Hewitt. I believe my client said it best when she said that a woman's breasts should not be a prerequisite for selling propane. We're in a courtroom with women all around us here and the judgment in favor of Amerigas should be vacated because Ms. Hewitt established in her opposition to the motion for summary judgment that there are disputed issues of material fact related to her termination from Amerigas and also as to her gender and age discrimination claims and I think that the Court just disregarded that evidence or ignored the evidence. The only evidence that Amerigas submitted for a legitimate reason for termination was a one paragraph e-mail that didn't even discuss the reasons for termination but had a note in the subject line or the ray line stating expense reduction and that was an e-mail dated March 5th of 2002. But that is not the reason that Ms. Hewitt was told she was being terminated. She was terminated five days after reporting her fifth incident of sexual harassment or hostile sexual or gender based statements. They were express statements, they were directed to her, they were directed to her ability to work in a man's field in the propane industry. They were directed to her by three individuals in the company. She only reported one of them though, didn't she? No sir, she did not. She reported... I'm using the term report in the more formal way where one is reporting something to an individual for the purpose of some kind of disciplinary or corrective action being taken. And of the five, I think the first one with Moulton wasn't in any way gender based. He was just yelling at her for using his phone. You have the issues with King where he's getting a little touchy feely at the ranch and she tells him she's a little uncomfortable and there's never a problem there. You have the bathroom pinups, but as it turns out they have another bathroom that all the women are using and that doesn't seem to be a problem. She files no formal complaint there. And then what you have really is the issue with Zimmerman where she does file a formal complaint and Zimmerman is forced to make an apology in the presence of the judges. So we know that she's having a, there may be a few issues that she has, but this certainly doesn't seem to be a severe or pervasive circumstance. And the one thing that is formally reported by her seems to be pretty quickly and appropriately addressed. Respectfully, I completely disagree with that. That is the position that Judge Burrell took in the district court, but that is not the evidence. Aren't those the incidents though? They do not accurately describe the incidents. They do not accurately describe the underlying evidence that needs to go to a jury, Your Honor. In September, October, and November, Ms. Hewitt reported four separate incidents involving Mr. Moulton to Russ Cleland, who was her supervisor at that time. They were expressly gender-based. It was not any kind of a disagreement that she was having with him over territory because they did not share the same territory. She brought her own clients from Columbia. They were sharing the same office though, weren't they? They were sharing the same office, but there was no economic competition. He felt threatened by her because she was in the office and she was generating more sales than he was and more sales than Dan Green, a junior salesperson. Just so I understand, what issue we're talking about? Are we talking about the discriminatory termination of her employment or are we talking about a hostile work environment? Well, actually, with respect to Mr. Moulton, it's both, Your Honor, because Mr. Moulton told her he didn't think women should be in propane. He didn't. Did he have any part in the termination? Yes, he did. He actively encouraged Paul Elkins, who was his supervisor, to terminate Ms. Hewitt, and she testified to that. And Mr. Elkins testified in his declaration in support of the summary judgment that he made the decision to terminate Ms. Hewitt. He was not her supervisor, and her supervisors were not involved in that decision, and there's no evidence in any way, shape, or form that they were even consulted about her work, her background, or her sales. In fact, her supervisors assured her when she reported the subsequent issue after she was transferred to Jackson that she would not be terminated because her sales were so high. Ms. Hewitt, with respect to the termination, was a commissioned salesperson. So to reduce expenses. Yes, folks, at least my question is, who were the persons who made the decision to terminate Ms. Hewitt? Well, according to the summary judgment motion, it was Paul Elkins, but that didn't come out until summary judgment. We had set depositions in February to take the depositions. We were prepared to move forward on that, and the depositions were canceled because of opposing counsel's vacation schedule, not because of anything Ms. Hewitt did or because of my lack of preparedness at that time. Well, that's a separate question as to whether it was proper to deny the request to reopen Discovery. I agree, but the point is that we attempted to show the court that there was additional discoverable evidence that would shed light on what the real reasons were for her termination, and that the reasons stated just did not make sense. They did not make sense if it was in fact and I'll just deal with termination first, because if it was in fact an expense reduction, then why was a commissioned salesperson eliminated and offered a position back as a salesperson that would have the same cost to the employer of benefits? There was no reduction there. Isn't that undercut your argument that somehow they're getting rid of her because she's a thorn in the side of people? I mean, they gave her, you know, she had her choice of either a severance package or coming back as a customer rep until another sales position opened up, which they told her she'd be able to fill. At least that's according to the declarations that were filed in opposition to your motion. And Ms. Hewitt disagreed with that in her deposition testimony, and that is a disputed fact right there, because she was only allowed to come back to work if she waived her claims of discrimination against Amerigas, and she was offered a subordinate position at less pay in the office where there was a sales position open. She was working in an office in Jackson and Amador counties on territory. No one else was working, and she was doing very good, brisk sales business in areas that there were no men working. She was working commercial sales, and she was the only salesperson who was qualified to install underground tanks. And she was exceeding the sales in residential sales for the two men that were retained by Amerigas, as well as in terms of their sales, and Mr. Moulton was paid for her sales after she left the company. So the standard is whether or not, the standard that this court has put forward is whether or not we can show that by the evidence in the record on summary judgment that their reason for termination is disbelieved by the facts. So that's with respect to termination. With respect to a hostile work environment, Ms. Before we get to hostile work environment, where is the evidence of age discrimination in this case? That is slim, Your Honor, and I will concede that. It's based upon Mr. Zimmerman's comments to Ms. Hewitt that he thought she should look like the younger girls in the office. We had Mr. Zimmerman's deposition set as well as Mr. King's deposition set, and that was not allowed to go forward. Well, wasn't the statement by Zimmerman that he didn't consider the plaintiff, Ms. Hewitt, to be a real woman in comparison to Ms. Burcham, and that you extrapolate from that because Ms. Burcham was younger than Ms. Hewitt, therefore there was some kind of age discrimination? And Zimmerman's not even a, I mean, he's a coworker. No, sir, he was not. He was a service manager in the Jackson office. That's another misstatement in the record. Well, that's not the evidence we have before us. Well, yes, you do, Your Honor. You have that he was a service manager in Ms. Hewitt's deposition testimony. The court, in their opinion, stated he was a coworker, and that is not correct. That is a mistake in the record. He was not her coworker. He was not a sales agent at all. He was a manager in the Jackson office. And Ms. Hewitt... He wasn't a coworker, but yet he was... He was co-employed with her, but he was in management, and he knew full well that they had female sales agents in that office. I thought Mr. King was a supervisor of the Jackson office. He was a supervisor of sales agents, Your Honor. Mr. Zimmerman was a service manager, but he was not a subordinate or equal to Ms. Hewitt. He was in management with the company. This may be part of the problem when you don't take discovery. You don't take depositions of the other side. I realize your position is going to be, well, we were trying, but yet you got so close to the cutoff here. So much time went by without any of these depositions going forward. And that, Your Honor, is why we maintain that there was an abuse of discretion in that regard, because you cannot... I did want to speak to the hostile work environment, but since you've raised that, I'll address that directly. You cannot just say one individual is responsible. I was in trial. I was in a jury trial in Sacramento Superior Court. And you cannot say that one person is responsible for not completing discovery during a very tight timeline when the other individual also is not available. And there were circumstances on both sides that were unanticipated. The length of trial was unanticipated. There was a death in someone's family. But the third circumstance was the vacation of an opposing counsel. After two months of attempting to obtain deposition dates, I just went ahead and set them. And then, of course, that happened to fall within her, within opposing counsel's vacation schedule. And I attempted to extend professional courtesy, and it came back on me, Your Honor. I did not accurately, I believed we would complete discovery within the timelines, and I was trying to stay within the trial date and within the settlement conference date. In fact, I even obtained a stipulation from opposing counsel that we could extend one additional time to get these depositions taken care of that still would not have disturbed either the trial date or the settlement conference date. But the court would not hear my motion under Rule 16. And under Rule 56, it heard it under or deemed it under 56, the same date as the summary judgment was heard, and no oral argument was permitted. So I firmly believe, I'm convinced that if we had been allowed to complete those depositions in February, we would have had more than sufficient evidence to defeat a summary judgment. But even without those depositions, we believe that the reasons stated for termination just do not hold up, Your Honor. And just briefly with respect to the hostile work environment, there is nothing more hostile for a woman than to walk into an office to work with men who tell her that she's not welcome, because she's a woman, that she cannot attend training because she's a woman, that she cannot work in the territory or even use a telephone because she's a woman, when those exact same courtesies and those exact same privileges are offered to the other men working in that office. So there's no reason to think that that pervasive of an atmosphere is going to change. Ms. Hewitt reported it to Russ Cleland and to Steve Massini and to Jay Stevens, and nothing was said to Mr. Moulton. She instead was transferred, and she took it in stride and she sucked it up and went down to another office, commuting two hours a day, and built a new territory. And then when she reported a fifth instance that involved physical conduct with Tim King and Mr. Zimmerman's very disrespectful statement about her, which she overheard, it was not, she overheard and wouldn't have known he had said that if she hadn't overheard it and confronted him, then she's terminated and it's supposedly for expense reduction. It just doesn't, it just does not pass the smell test. And she's entitled to have a jury make a determination whether or not another woman under the same circumstances would have considered that to be a hostile environment to work in. And I'll reserve some time for remarks. You may do so, counsel. We'll hear from Amerigas. Good morning, Your Honors. My name is Melinda Reichert, and I'm an attorney with the law firm of Morgan, Lewis & Barkeas, representing the defendant and the respondent, Amerigas. I see there are four issues before this Court. One is the discovery issue, whether the trial court abused its discretion in failing to allow the plaintiff to reopen discovery a second time. The second issue is the termination issue and whether there was any evidence that that was discriminatory based on age or sex. The third issue is the sex harassment issue, whether there was sufficient evidence of sex harassment. And the fourth issue is the retaliation and whether the trial court abused its discretion in sending that case, dismissing that case without prejudice because it was only a state court claim. And I can deal with those in any order you want, but I wanted to cover one thing that was raised, I think, by Judge Miller, which is whether Mr. Zimmerman was a manager or not and whether there was any evidence of that. And I recall reading it in the deposition. It's on the record at page 435. The question is, question, he was a non-manager, right. Answer, may have been considered a service manager, but he was not a direct manager. Question, he didn't have any responsibility over you in the management chain, did he? Answer, that is correct. So I don't believe that that is sufficient evidence that he was a manager. So I can start with the discovery issue first, if that's convenient to the Court. It's entirely up to you, Counsel. The trial court made it entirely clear in the pretrial scheduling order that was in April of 2003 that discovery, completion of discovery means that all discovery must be complete, that requesting an extension doesn't mean you get the extension, that the court was serious about its deadlines and that you needed court approval to change it. Trial courts are given and must be given great flexibility in running their courtrooms, managing deadlines, setting deadlines, and making sure that counsel lives up to them. And the law is clear that the court is, in fact, given this discretion, and the standard is the same under either Rule 56F or under Rule 16. The trial court's decision on this issue can only be reversed if it was an abuse of discretion, and there was clearly no abuse of discretion here. Now, in order to prevail on this issue, the discovery issue, the plaintiff must show two things to the court. The appellant must show two things, that she diligently pursued discovery and that more diligent pursuit was not feasible. That's the first thing. And the second thing, that additional discovery would have precluded summary judgment. And she can't show either of those. So let's take the first one first. Did she diligently pursue discovery? The answer is no. The trial court found no, and that's what's supported by the record. She did nothing in 2003. The case was set, the discovery deadlines were set in April of 2003. But you heard counsel suggest that it was her generosity in accommodating someone's vacation schedule that consumed a large part of this time. What's your response? That, I believe, is not accurate on the record. The vacation time of defense counsel was the last two weeks of February. And because of that vacation time, the discovery was extended a second time until the end of April. So, yes, there was a vacation, but because of that vacation, a five-week extension of the discovery deadline was given. So that vacation had nothing to do with why the plaintiff didn't do any discovery in 2003, why she waited to the last date to do it. But even then, she got an extra five weeks because of that two-week vacation. So that's not the reason she didn't complete discovery by the second deadline. Secondly, there was a suggestion that Ms. Promisloh's niece's death had something to do with the delay. It clearly didn't. That death occurred at the very beginning of March, and Ms. Promisloh was out for eight days, the 1st to the 8th of March, because of that death. But the plaintiff's counsel was also out during that same time frame. And remember, on February the 20th, the parties had set these depositions for March 24th to 26th. So it's not a situation where the depositions were set to occur at the time that Ms. Promisloh was out due to the death of her niece. These depositions before the niece had even died were set to occur at the end of March. And when the trial judge originally agreed to give that five-week extension, he was told only that the plaintiff's counsel was set for a one-week trial starting March 15th. Never told that this was tentative. Never told that, in fact, plaintiff's counsel had four trials and one arbitration and would be out from March 15th to April the 6th. And I think that that's part of the reason why the trial court felt that he was misled by the granting the original extension and only granting it for five weeks, because that's what he was asked for and that's what he gave. So the parties agreed to that extension on the 13th of February, and the deposits, as I said, were set for the end of March. Ms. Promisloh's vacation, death of her niece, had nothing to do with the fact that the depositions didn't take place at the end of March. That was due entirely to plaintiff's counsel's schedule and also to the fact that she waited until the last minute to do any discovery in the first place. If discovery had been done in 2003, like the judge instructed the parties to make sure you complete this work on time, you don't wait until the last minute because issues do arise. And so the discovery should have been done throughout 2003 and not waiting until the end. So that's the first issue. Did the plaintiff exercise reasonable diligence to conduct a discovery in a timely manner? And I think that the trial court was correct in concluding that she did not and there's no abuse of discretion there. The second issue is even if she'd been allowed to do the discovery, would it have revealed any evidence that would have defeated summary judgment? And again, the trial court concluded correctly, I think, that there was no evidence that she would have discovered that would have changed the summary judgment ruling. She lists on page 14 to 16 of her brief the things that she thinks she would have learned if she had done these depositions. But none of those would have impacted summary judgment. For example, she says, I would have learned whether Mr. Moulton was qualified in the same areas as she was. But that had nothing to do with summary judgment. She would have learned when her supervisors learned of the decision to terminate. But that had nothing to do with summary judgment. Her supervisors were not the direct, the people who made the decision. And by the way, she indicates that she didn't realize that Mr. Elkins was the decision maker on the termination until too late. She knew that from the initial disclosures. The initial disclosures, as the district court requires, make you list who your witnesses are and what they know. And the very first witness on defendant's initial disclosures, as indicated by the additional supplemental excerpt to the record, the very first witness is Mr. Elkins. And what does he know? He knows the reasons for the plaintiff's termination. Not the witnesses, the people that she was trying to take the deposition off. She never noticed or scheduled Mr. Elkins' deposition, even though she knew from almost a year earlier that he was the decision maker on the termination. She wanted to learn about complaints that were made in 2001. But that relates to the retaliation complaint, which the trial court dismissed without prejudice. So nothing would have helped her there on the summary judgment on the discrimination claim. She wanted to learn about the transfer to Jackson. But, again, that has nothing to do with discrimination, only the retaliation claim. She wanted to learn about the discipline of Mr. Zimmerman. But, again, that wouldn't have helped her on the summary judgment motion. We all know that she did report it. We all know that he was disciplined, that he gave her an oral apology. And that something was put in his file about that. So there was nothing that she could have learned in the discovery that would have helped her on that issue. She said she would have learned about prior incidents of sex harassment in Jackson. But that wouldn't have helped her because that was before she got there and nothing that she witnessed. And then, finally, she said she would have learned more about the comments by Mr. Zimmerman. But, again, that's irrelevant. We already knew what the comments were. We accepted her testimony as true on that. So, in conclusion, she should have started discovery earlier, not waited until the last minute. She should not have agreed to a deadline that she couldn't meet. If she couldn't meet these deadlines, if she was so overwhelmed with all this work, she should have brought in co-counsel and not simply done nothing and then come to the court and ask the court to extend its deadlines. There's no showing that this discovery would have changed or defeated the summary judgment. Yeah. Almost half of your time has gone by. It might be good to get to the merits. Absolutely. Let's go to discrimination, the second issue. The issue here is did Ms. Hewitt rebut the legitimate non-discriminatory reason that Mary Gass gave to terminate her employment? Was there a pretext for discrimination? Was there an inference of discrimination from the word? Because, remember, the only adverse job action is the termination. So she has to show that there was an inference of discrimination from the evidence that she produced that showed that the reason that Mary Gass gave for terminating her employment was not the true reason. So what are the undisputed facts? One physician out of three went away, undisputed. She had the least propane sales experience, undisputed. She had the least seniority, undisputed. One person who was retained was older than her. There were no age comments. She was over 40 when she was hired, and she was offered an alternate position. All of those are undisputed, and all of those create an explanation for why the defendant did what she did. So what is her evidence as to why this is, there is discrimination? Well, she talks about these stray remarks, what I call stray remarks by non-decision makers, Mr. Moulton, Mr. King, and Mr. Zimmerman, and she says that these remarks and these comments and these conduct indicate that her termination was discriminatory. But again, there's no dispute that Mr. Moulton, King, and Zimmerman were not decision makers on the termination, so there's no nexus between the behavior of these coworkers and the decision to terminate her employment. They don't show that she was fired because of her sex or because of her age. She claims that Mary Gass shouldn't have had a layoff, or if it had a layoff, it shouldn't have laid her off because she was a good person. But again, the Court's entirely clear. We don't second-guess business decisions. The company can make a decision. It can be even wrong in its decision. As long as it makes a decision and there's no inference of discrimination, then the decision is accepted. She claims that there were inconsistent reasons for the termination, but there were no inconsistent reasons. The reasons she gives are, one, position elimination, and two, poor sales. Those aren't inconsistent. They're totally consistent. If you have poor sales, you eliminate a position. So that, I think her position was the poor sales were on the East Coast, not the West Coast, and that if there were to be any elimination, it would be on the East Coast rather than where sales were better. But then, of course, there is the individual in Angel's Camp who was let go as well. That's exactly right. There were two people who were let go. And again, you know, she's not running this company, and they make a business decision, and I think that the court must respect that decision, at least unless there's an inference that it was discriminatory, and there isn't in this case. So I'd like to move to the harassment issue. The trial court was correct in its conclusion that the incidents that she relies on do not support a claim of harassment because. Is it the same as hostile work environment? Yes, correct. I think that's the part of the harassment that she's claiming. It wasn't they weren't severe or pervasive. They didn't affect the terms and conditions of her employment, and they were not sexual in nature. So let's go through them quickly. Mr. Moulton is a co-worker of hers. He said, God damn it, I don't want you using my phone. I will put a lock on it. Clearly a gender neutral statement. He took a lead off her desk, not conduct of a sexual nature. He excluded her from a meeting, not conduct of a sexual nature. These kinds of actions by him are not evidence of sex harassment. They do not make her work environment hostile, and they are not severe or pervasive. The Jacksonites. We have Mr. King. What did he do? He said he was a stud in high school and he turned a woman on. He put his arms around her while she was shooting clay pigeons to show her how to shoot. This is not severe or pervasive conduct of a sexual nature that changes the terms and conditions of her employment. That's what the trial court found. That's what the evidence showed. She heard he had engaged in a romantic relationship with a fellow employee. Again, that is not evidence that she was sexually harassed. It was away from work. It didn't make her environment hostile. Kennedy, that's what the trial court found. The trial court doesn't find things on sexual harassment. Right. He found it based on the evidence that was there. Let's assume everything she says is true, says the trial court. I assume everything she says is true. These comments happened. This conduct occurred. He did put his arms around you. This thing, even if I accept all that is true, that is not severe or pervasive sex harassment. The bathroom picture once didn't significantly impact her work environment. And then Mr. Zimmerman, admittedly the most egregious of the behavior, even if one considers it egregious, but he was not a supervisor, her supervisor. So the standard is, remember, under the law, that if it's co-worker sex harassment, meaning not her supervisor, then the company is only liable if it knew or should have known and failed to take appropriate action. And as soon as she complained, on March 7th, the company conducted an investigation, talked to her, talked to him, and disciplined him. Clearly, the company took appropriate action. So therefore, the trial court's decision on harassment should not be overturned. Last claim is retaliation. The trial court dismissed it without prejudice. The standard is abuse of discretion. Undisputed evidence that the decision to terminate was made on March 4th, and she complained on March 7th. So the termination, notwithstanding the fact that it came shortly after her complaint, could not have been caused by her complaint because it was made before her complaint. I just wanted in a couple of minutes to respond to some of the arguments that were made by the appellant. She said there was no evidence of what the reasons for the termination were other than the one e-mail. That's incorrect. There were two declarations that were submitted, one by Mr. Elkins on page 251 of the record, and other declarations that explained the reasons for the termination. So it's not that the reasons for the termination are simply based on a one-paragraph e-mail. It's correct that she only reported the one complaint formally on Mr. Zimmerman. The other ones, she complained to Mr. King that she felt uncomfortable when he touched her, but she never complained formally except for just that once, and then the company took appropriate action. It's undisputed that Mr. Moulton and Mr. King had no role in her termination or Mr. Zimmerman. So as I said, any conduct by them was simply no nexus between that and the termination. There's certainly no evidence of age discrimination, and I agree that the one comment by Mr. Zimmerman hardly evidences that Amerigas that Mr. Elkins discriminated against her based on her age. I have no other comments unless the Court has any. Thank you very much. Counsel. Ms. Kramer, you have some reserve time. Thank you. I'm going to address each point as it was raised by counsel. A little louder, Ms. Kramer. I'm going to address each point in the order it was raised by counsel. It's not surprising to me that the counsel arguing today is not the counsel who was litigating against me in the underlying action and has no personal knowledge about the communications between me and co-counsel at the – with Amy Promislo and Mr. Banks. In 2000 – That shouldn't be a problem unless there's something outside the record. It has – but the individual arguing the point has no personal knowledge of certain matters that I'm going to bring to the Court's attention at this time. Which are in the record. Which are in the record. Okay. Very good. In 2003, I worked with corporate counsel for Amerigas and obtained extensive documents so that – so as to avoid doing a formal documents production request. I received approximately six to eight binders of materials and went through those materials. In November – actually, in September, I was diagnosed with a tumor and went in for surgery and had medical treatment through November. I was not available for discovery during that period of time. I had made an agreement with co-counsel Mr. Banks – I'm sorry, actually with Ms. Promislo to take Jerry Hewitt's deposition in November. Instead, that deposition was rearranged two or three times to accommodate her schedule and then when I went to the deposition, Mr. Banks showed up, who was not the person whose schedule I was working with, but instead we went ahead and And with an agreement that we would complete Ms. Hewitt's deposition and that he would provide me with dates in November for the depositions of the principal defense witnesses. I did receive initial disclosures. It indicated a number of people, not just Mr. Elkins, had been involved in the decision to terminate. I noticed the depositions of her immediate supervisors because they were the individuals who had advised my client that she would not be terminated, that her And yet, three or four days after they made those assurances to her on March 12th, she was provided with a termination package on March 15th. It's just not consistent with what they were telling her. Ms. Promislo and I did discuss on February 20th a number of items. One was the completion of Ms. Hewitt's deposition, which was never set by opposing counsel, and we suggested tentative dates for her to come out to do the principal defense witnesses. I was in trial on March 15th, and through the end of March, however, the jury went into deliberations on March 23rd, and on March 19th, my office, and this is in the record, my office notified Ms. Promislo that the depositions would be proceeding. Ms. Promislo faxed a letter to me the next day saying she did not have enough time to make travel arrangements and she would not be appearing. She had noticed from February 1st that I was going to take those depositions. February 20th, we set those tentative dates. March 19th, she advised my office while I was in trial that she was unable to make travel arrangements. The depositions were not completed after that date because I did not receive dates from her when I could take her client's deposition. Instead, she told my office, and there is a declaration from my office indicating what she was, what we were advised, that she would be willing to work around my schedule as soon as trial was over to complete those depositions, and she subsequently reneged. It's very difficult to be in this position to know that I worked very hard to get discovery from defendants and we were unable to do so. But we would have, this is the way the discovery would have helped me. If I had been able to depose Mr. Moulton and been able to establish his experience, it would have negated their reason that Ms. Hewitt had the least amount of experience and the least amount of sales. Mr. Moulton was not experienced, nor did he work in two specific areas that Ms. Hewitt worked in, and that would help me on the termination claim. Mr. Elkins and the other supervisors were giving my client conflicting messages as to the reason for her termination. In fact, Russ Cleland, her immediate supervisor, refused to even answer the reason why she was let go. Mr. Zimmerman's, we do not know whether or not Mr. Zimmerman was actually disciplined. His discipline form is not signed. We have no way of knowing if it was ever put into his record. There's no indication he refused to sign it. He gave my client a very weak oral apology when he was asked to do so. He never submitted a written apology as he was supposed to have done as discipline. And the first time my client saw anything in writing was at her deposition over two years later. The prior incidents in Jackson would have helped my client because it would have shown whether or not she had an expectation that a hostile work environment there would have continued. Tim King was a decision maker. He was her direct supervisor at the Jackson office. And although Mr. Moulton and Zimmerman were not her direct supervisors, they did impact the conditions of her employment on a daily basis. The comments are not stray remarks to my client. They were made repeatedly. They were made consistently. And they all pertain to the fact that she was a woman. With respect to the phone, the leads and the meetings, the reason why that's so significant is because Mr. Moulton went out of his way to help the male counterparts. But he refused to work with Ms. Hewitt. And I'll stop there. My time is up. Thank you, counsel. The case just argued will be submitted for decision. And the court will adjourn. Thank you.
judges: Hug, O'scannlain, Miller